UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAKE COUNTRY CORP.,

       Plaintiff,

v.                                                                    Case No. 1:08-CV-905

THE SHERATON LLC,                                 HON. GORDON J. QUIST

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

The Court has before it plaintiff Lake Country Corp.'s ("Lake") ex parte motion for a temporary restraining order and preliminary injunction. (Docket no. 2.) Because the Court has read the relevant documents and heard two oral arguments by counsel for the parties, the Court will treat the motion as one for a preliminary injunction. When deciding such a motion, the Court looks at the following factors: "(1) whether the plaintiff[] [is] likely to succeed on the merits; (2) whether the plaintiff[] will suffer irreparable harm in the absence of a[n] [injunction]; (3) whether granting the [injunction] will cause substantial harm to others; and (4) whether the issuance of the [injunction] is in the public interest." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). These are factors to be balanced, not prerequisites that must be met. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). A district court need not make specific findings on each of the four factors if fewer factors are dispositive of the issue. *See In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The decision to grant a preliminary injunction is within the Court's broad

discretion.  *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 540-41 (6th Cir. 2007).

**Facts**

Lake owns and operates a hotel as a licensee of defendant Sheraton.  The parties entered into a licensing agreement and a reservations agreement (collectively, the "Agreement") establishing their rights and obligations on August 30, 2001.  The Agreement became effective June 30, 2002 and was to expire June 30, 2012.  The parties disputed whether the Agreement required Lake to make certain improvements to the property.  As a result, Lake filed suit in this Court and the parties entered into a settlement in which they agreed the Agreement would expire June 30, 2009.  Subsequently, Lake learned Sheraton refused to book, through its reservation system, reservations for Lake's hotel for dates after the modified expiration date, June 30, 2009.  Lake contends the Agreement provides no limitation on its right to use the reservation system until the expiration date.  To assert its claim, Lake filed a new, separate lawsuit with this Court and requests a temporary restraining order and preliminary injunction preventing Sheraton from refusing to take reservations for dates after June 30, 2009.

**Analysis**

**1.  Irreparable harm**

Lake has not demonstrated it will suffer irreparable harm should the Court deny its motion.  Lake acknowledged in a telephonic conference it can employ a third-party reservation system to take reservations for dates after the termination date.  Lake estimates it will take 60 days to make such arrangements.  It is now October 6, 2008, and it is unlikely that a large portion of its reservations at present are for dates after June 30, 2009.  Lake has not demonstrated that money damages will be insufficient to return Lake to its expectation position should Sheraton's refusal to take reservations

for dates after the termination date be found to breach the Agreement.  Furthermore, it appears that some disturbance to Lake's business will be inevitable as Lake must secure the services of another reservation service and remove Sheraton's marks from the property once the Agreement expires.

Lake is permitted to use a third-party reservation system.  For reservations made through such a system for dates before June 30, 2009, Lake shall pay Sheraton the usual fee for reservations from a third-party reservation system per the Agreement, including Exhibit A of the Reservations Agreement.  Lake need not pay Sheraton any fee for reservations Lake makes through a third-party system for dates after June 30, 2009.  Lake shall inform inquirers on its confirmation notices and on its website that it will not be a Sheraton franchisee after June 30, 2009.  The purpose of this is to enable Lake to maintain its business and to provide a smooth transition from Sheraton.  The sooner Lake gets going on this, the better.

**2.  Likelihood of success**

Lake has not demonstrated it is likely to prevail on the merits of its claim against Sheraton. Lake states that "nothing in the express terms of the Settlement Agreement, License Agreement, or Reservation Agreement permits Sheraton to block its reservation system from accepting reservations from Lake Country customers for dates after June 30, 2009."  (Docket no. 1 at 4.)  Lake also states it "bargained for [the] right to utilize the Sheraton reservation system until June 30, 2009, for the acceptance of reservations for any an all dates."  *Id*.

Although the Agreement does not explicitly address whether Sheraton may refuse to take reservations for dates after 30 June 2009, it frequently refers to Lake's obligation to conform itself to Sheraton's exacting standards.  The Agreement specifies:

> Systems Standards and Policies define the System and . . . enhance the public image and reputation of businesses operating within the System.  Licensee agrees    to

3

> Operate the Hotel in strict conformity with the Standards and Policies, including all rules, regulations, and policies which are by their terms mandatory, including, without limitation, those contained in the Manuals. . . . Licensee shall at all times implement all portions of the System in its operation of the Hotel and shall not permit any business establishment on the Premises that does not meet the standards for business establishments set forth in the Manuals.

(Docket no. 3-2 at 11.) This clause establishes that Sheraton did not intend to entwine itself through the Agreement with any organization that was not a Sheraton in compliance with Sheraton standards, policies and procedures. This intention is further shown by the requirement that "Licensee agrees to use the Hotel solely for the operation of a full service lodging facility . . . pursuant to the Standards and Policies, and to refrain from using or permitting the use of the Hotel for any other purpose." *Id*. at 13. The Agreement also prohibits Lake from "promot[ing] or advertis[ing], at or in connection with the operation, promotion or advertisement of the Hotel, hotels (other than Sheraton Hotels or other hotels operated or offered by Starwood Lodging). . . . Licensee must not . . . market or promote any hotel that is not a Sheraton Hotel . . . or . . . require guests . . . to patronize other hotels." *Id*. at 21. Added up, these requirements indicate Sheraton did not intend to allow Lake to abet Sheraton's competitors.

Sheraton did contemplate that reservations at Lake's hotel might be honored when Lake was no longer a Sheraton licensee. That contemplation is limited, however, to a single circumstance: when outstanding reservations remain after Lake has breached the Agreement. *Id*. at 30. The absence of any discussion of such reservations outside this context suggests that Sheraton never intended to take reservations knowing, when the reservations were taken, that Lake would definitely not be operating as a Sheraton hotel when the guests arrived. This interpretation is further supported by the Agreement's many clauses establishing Lake's obligation to conduct itself in conformity with Sheraton's standards and procedures. Furthermore, once the Agreement expires, Lake's hotel is one

of Sheraton's competitors. Sheraton is free at that time to open a new Sheraton in Lake's vicinity. Nothing in the Agreement suggests either party intended Sheraton would further the operation of Lake's business as a competitor. In fact, the entire Agreement contemplates that Sheraton's acts will attempt to further Lake's objectives as a member of the Sheraton franchise.

### 3.  Likelihood of harm to others and the public's interest

Sheraton has stated that accommodating Lake would be costly and time consuming, requiring re-training personnel at numerous call centers nationwide and modifying the software used to book reservations. Lake has not shown that the balance of harms weighs more heavily upon it than Sheraton. Furthermore, the public's interest would weigh against issuing an injunction. The public has an interest in avoiding the potential confusion and dissatisfaction which may result if guests call Sheraton's reservation system to book a hotel only to find out later, perhaps even when they arrive, that the hotel is not a Sheraton. They would probably want their Sheraton "points" to earn "free nights" but Lake is not in any position to give these points.

Lake has failed to satisfy the Court that the circumstances warrant issuing an injunction.

Therefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a temporary restraining order and preliminary injunction (docket no. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that for any reservations Lake makes through a third-party system for dates before June 30, 2009, Lake shall pay Sheraton the usual fee for reservations from a third-party reservation system per the Agreement, including Exhibit A of the Reservations Agreement. Lake need not pay Sheraton any fee for reservations Lake makes through a third-party

system for dates after June 30, 2009.  Lake shall inform inquirers on its confirmation notices and on its website that it will not be a Sheraton franchisee after June 30, 2009.

Dated:  October 6, 2008                                       /s/ Gordon J. Quist
                                                             GORDON J. QUIST
                                                       UNITED STATES DISTRICT JUDGE